IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN HAWKINS, )<br>DION HAWKINS, )<br>DONELL WINDER, )<br>CHRISTA BATES, )<br>   )<br>   Plaintiff, )<br>   )<br>v.  )<br>   )<br>STATE OF DELAWARE DEPARTMENT )<br>OF CORRECTION,  )<br>   )<br>   Defendant. ) | C.A. No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### NATURE OF THE ACTION, JURISDICTION AND VENUE

1. This is a civil action seeking damages for discrimination on the basis of sex and race under provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). The discrimination affected the terms affected the terms, conditions and privileges of employment with the State of Delaware, Department of Correction ("DDOC") by failing to promote several of plaintiffs on the basis of race and/or sex, subjecting plaintiffs to disparate treatment on the basis of sex and/or race, and by creating an intimidating, hostile and offensive working environment. This action also seeks damages and other relief for retaliation against plaintiffs for actions protected under Title VII.

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§ 2000e-5(f), and 28 U.S.C. §§ 1331 and 1343.

3. Venue lies in this judicial district because all of the events giving rise to the claims occurred within the District of Delaware.

## PARTIES

4. Plaintiff Karen Hawkins ("Karen Hawkins") is a female African-American who resides at 615 Fence Post Lane, Viola, Delaware, 19979.

5. Plaintiff Dion Hawkins ("Dion Hawkins") is a male African-American who resides at 615 Fence Post Lane, Viola, Delaware, 19979.

6. Plaintiff Donell Winder ("Winder") is a male African-American who resides at 16 Teatown Road, Greenwood, Delaware, 19950.

7. Plaintiff Christa Bates ("Bates") is a female Caucasian who resides at 728 Dairy Drive, Smyrna, Delaware, 19957.

8. The DDOC is an agency of the State of Delaware, and the employer of the plaintiffs during all events relative to this litigation. Plaintiffs were assigned to the Central Violation of Probation facility ("CVOP") located at 875 Smyrna Landing Road, Smyrna, Delaware during all events relevant to this litigation.

9. CVOP was under management of Warden Vincent Bianco ("Warden Bianco") and Deputy Warden James Hutchins ("Deputy Hutchins") during all events relevant to this litigation.

## ADMINISTRATIVE PROCEEDINGS

10. Plaintiffs have exhausted all administrative remedies in order to bring this action:

a. Karen Hawkins filed a charge of discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission (the "EEOC") on or about August 6, 2003. On April 28, 2005 and on May 3, 2005, the EEOC issued Karen Hawkins "right to sue" letters.

b. Dion Hawkins filed a charge of discrimination with the DDOL and the EEOC on or about August 6, 2003. On or about April 27, 2005, the EEOC issued Dion Hawkins a "right to sue" letter.

c. Winder filed a charge of discrimination with the DDOL and the EEOC on or about November 24, 2003. On or about May 3, 2005, the EEOC issued Winder a "right to sue" letter.

d. Bates filed a charge of discrimination with the DDOL and the EEOC on or about November 25, 2004. On or about May 3, 2005, the EEOC issued Bates a "right to sue" letter.

## FACTUAL BACKGROUND

### Karen Hawkins

11. Karen Hawkins has been an employee of DDOC since 1987 and a lieutenant since September 1999. In October of 2000, she interviewed for one of five open lieutenant positions at CVOP. Because four of the five lieutenant positions went to white males with less seniority than her, a grievance proceeding was filed by Karen Hawkins' union AMSCME Local 247 ("Local 247") and Karen Hawkins was subsequently appointed as a lieutenant at CVOP in December 2000.

12. Once appointed, however, Karen Hawkins found that overtime was continually made available to white lieutenants with less seniority and that she never notified of available overtime.

13. In late January 2001, Karen Hawkins' immediate supervisor was notified of the problem and an overtime call procedure for the lieutenants based on seniority was put in place to end the prior subjective and discriminatory practice.

14. In August 2002, despite receiving a distinguished rating on her employee performance appraisal, Karen Hawkins was passed over for the position of staff lieutenant at CVOP in favor of a white male officer with less seniority.

15. Karen Hawkins filed a grievance proceeding through Local 247 citing discrimination regarding the failure to appoint her as staff lieutenant. In response, CVOP management refused to appoint her to be the full time staff lieutenant, and instead, altered the position and made it a rotating appointment. Thus, although Ms. Hawkins was made the "acting staff lieutenant", she was permitted to hold that title for only three to four months.

16. Beginning in the late fall of 2002, the overtime call procedure for lieutenants was being ignored and white lieutenants began trade shifts and assign overtime to lower ranking white correctional officers. Beginning in April of 2003, Karen Hawkins filed several grievances regarding the assignment of overtime at CVOP.

17. In response to the grievance proceedings and the filing of a charge of discrimination with the EEOC, Karen Hawkins was subject to less favorable treatment by her direct supervisors and co-workers. In addition, Karen Hawkins was subject a series of discriminatory and retaliatory actions, including but are not limited to the following:

  a. removal all memorandums authored by Karen Hawkins from the duty office wall while retaining all memorandums written by the white officers;

  b. removal and reassignment of her job duties and responsibilities;

  c. denial of the opportunity to serve as the temporary chair of the diversity committee at CVOP allegedly because of facility operation needs and staffing concerns, even though numerous white officers were allowed time off for leave or union related business on occasions when the facility was at or below minimum staffing;

  d. placement of her working personnel file containing confidential medical and personal data in an unsecured location;

  e. refusal to permit her to participate in the interview and hiring process at CVOP for a ten to eleven month period;

  f. restriction of her ability to supervise and discipline correctional officers under her command;

  g. commencement of internal investigations and/or disciplinary proceedings for conduct that was not materially different from that of other DDOC employees who were neither investigated nor subject to discipline;

  h. exclusion from lieutenants' meetings with CVOP management by failing to advise her of changed meeting times or purposefully scheduling the meetings at times when it was known that she could not attend; and

  i. refusal to complete or update Karen Hawkins' employee performance appraisal since 2002.

18. In 2004, Karen Hawkins was denied the opportunity to interview the staff lieutenant's position at CVOP (which now had reverted back to a full time one person position). DDOC appointed a white male with less seniority to the position.

19. On information and belief, the selection process for the staff lieutenant position for CVOP was highly tainted not only to preclude Karen Hawkins from being selected for an interview, but also to keep any African-American officer from holding the position of staff lieutenant at CVOP.

20. After years of attempting to be hired as the staff lieutenant at CVOP, a level 4 facility with a lower inmate population that she preferred and was qualified to hold, Karen Hawkins agreed to take a staff lieutenant position at the Delaware Correctional Center ("DCC"), a level 5 facility within the DDOC with a larger and more violent inmate population.

### Dion Hawkins

21. Dion Hawkins has been an employee at DDOC since 1988. He was assigned to CVOP since July of 2001 and is employed as a correctional officer.

22. Dion Hawkins is married to Karen Hawkins. The Hawkins were one of several couples that worked at CVOP and were the only African American couple at that facility.

23. On about July 27, 2003, Dion Hawkins was involuntarily transferred to DCC On information and belief, the transfer was part of an effort to retaliate against the Hawkins for grievance proceedings filed by Karen Hawkins with respect to overtime issues. Testimony by Warden Bianco at Dion Hawkins' grievance proceeding also shows a racial motive was used to justify the transfer.

24. In response, Dion Hawkins filed a grievance proceeding through his union and a charge of discrimination with the EEOC. Through the grievance proceeding, CVOP was ordered to allow Dion Hawkins to return to CVOP.

25. Following his return to CVOP, Dion Hawkins was subject to less favorable treatment by his direct supervisors and co-workers. In addition, he was subject to a series of discriminatory and retaliatory actions, including but not limited to the following:

    a. commencement of internal investigations and/or disciplinary proceedings for conduct that was not materially different from that of other DDOC employees who were neither investigated nor subject to discipline;

    b. denial of time off from work, allegedly because of minimum staffing issues while permitting white officers to take time off for leave or for union related business on little or no notice and at times when the officer's absence caused the facility to fall below minimum staffing requirements;

    c. alteration Dion Hawkins' job duties and the issuance of directives that raised significant safety concerns with respect to his interaction with the offenders at CVOP; and

    d. refusal to complete or update Dion Hawkins' employee performance appraisal since 2002.

### Donell Winder

26. Donell Winder has been an employee of DDOC since July 25, 2002 and was assigned to CVOP as a correctional officer on or about September 23, 2002.

27. After Dion Hawkins was involuntarily transferred to CVOP, Winder informed DDOC that he intended to be a character witness for Dion Hawkins at his grievance

proceedings, and raised concerns to CVOP management and others about discrimination and retaliation against African-American correctional officers at CVOP.

28. Subsequent to stating his intent to be a witness for Dion Hawkins and raising complaints of discrimination, Winder was subjected to less favorable treatment by his direct supervisors and co-workers. In addition, he was subject to a series of discriminatory and retaliatory actions, including but not limited to the following:

    a. commencement of internal investigations and/or disciplinary proceedings for conduct that was not materially different from that of other DDOC employees who were neither investigated nor subject to discipline;

    b. denial of time off from work, allegedly because of minimum staffing issues while permitting white officers to take time off or leave or union related business on little or no notice and at times when the officer's absence caused the facility to fall below minimum staffing requirements;

    c. alteration of Winder's job duties and the issuance of directives that raised significant safety concerns with respect to his interaction with the offenders at CVOP; and

    d. refusal to complete or update Winder's employee performance appraisal since being assigned to CVOP.

### Christa Bates

29. Christa Bates hired at DDOC on or about July 9, 1998 and was assigned to CVOP on or about June 1, 2002. During all times relevant to this litigation, Bates held the rank of Sergeant.

30. In June of 2003, Bates advised CVOP that she was pregnant. Bates was assigned to the 11:00 p.m. to 7:00 a.m. shift (the "11 to 7 shift"). Bates spoke to CVOP management on several occasions about staffing level issues on the 11 to 7 shift and the inability to get time off because of minimum staffing levels. Bates was told she could leave if she did not like her schedule.

31. Seeking a more flexible schedule, Bates put in a bid to interview for an opening as sergeant on the 5:00 a.m. to 1:00 p.m. shift (the "5 to 1 shift"). Bates was scheduled for an interview.

32. On information and belief, the interview process for the 5 to 1 shift sergeant position was deliberately tainted to favor a male candidate by providing him a list of questions, preparing him for the interview and allowing him to sit on an interview panel for another open sergeant position that was being filled at the same time as the 5-1 shift opening.

33. Bates' supervising lieutenants began pressuring her to leave CVOP because of her pregnancy.

34. Bates wrote a letter in support of Dion Hawkins' grievance following his involuntary transfer to DCC and openly complained about treatment of black officers at CVOP.

35. Subsequent to stating her intent to be a witness for Dion Hawkins and raising complaints about discrimination, Bates was subjected to less favorable treatment by her direct supervisors and co-workers. In addition, she was subject to a series of discriminatory and retaliatory actions, including but not limited to the following:

a.     commencement of internal investigations and/or disciplinary proceedings for conduct that was not materially different from that of other DDOC employees who were neither investigated nor subject to discipline;

b.     denial of time off from work, allegedly because of minimum staffing issues while permitting other officers to take time off for leave for union related business on little or no notice and at times when the officer's absence caused the facility to fall below minimum staffing requirements;

c.     alteration of Bates' job duties and the issuance of directives that raised significant safety concerns with respect to her interaction with the offenders at CVOP;

d.     restriction on her ability to supervise and discipline the correctional officers under her command; and

e.     refusal to complete or update Bates' employee performance appraisal since February 6, 2003.

36.    As a DDOC employee who complained about discriminatory conduct and supported a co-worker claims of discrimination, Bates was subjected to a pattern of retaliatory conduct that ultimately caused her to resign from her position in 2005.

### DDOC's Pattern and Practice of Retaliatory Conduct

37.    During all times relevant to this complaint, the DDOC did not have an adequate policy or complaint procedure for employees subjected to discriminatory and retaliatory conduct.

38.    The DDOC has a practice of failing to prevent retaliation against its employees who have complained of discrimination and other forms of misconduct by fellow

employees. In fact, the DDOC has a practice of freely disseminating information about internal complaints made by its employees in an effort to discourage employees from making complaints.

39. Likewise, the DDOC has a practice of commencing internal investigations and imposing discipline against employees who make internal complaints as a means of discouraging them and other employees from filing or continuing to pursue their complaints.

## COUNT I
## TITLE VII--DISPARATE TREATMENT--FAILURE TO PROMOTE
## (KAREN HAWKINS)

40. Plaintiffs incorporate and reallege paragraphs 1 through 39 as if fully restated herein.

41. In 2004, Karen Hawkins was qualified for and capable of performing as the staff lieutenant at CVOP.

42. CVOP, through a tainted applicant selection and interview process, refused to interview Karen Hawkins and then awarded the position to a white male with less seniority.

43. By failing to promote Karen Hawkins to the staff lieutenant position at CVOP because of her sex and/or race, DDOC violated her rights under Title VII.

## COUNT II
## TITLE VI --DISPARATE TREATMENT -- FAILURE TO PROMOTE (BATES)

44. Plaintiffs incorporate and reallege paragraphs 1 through 43 as if fully restated herein.

45. In 2003, Bates advised CVOP that she was pregnant.

46. Bates had already attained the rank of sergeant and was qualified for and capable of performing as the sergeant on the 5 to 1 shift at CVOP.

47. Despite permitting her to interview for the 5 to 1 shift, the interview process was tainted to favor a male employee who was eventually assigned the position.

48. By failing to promote Bates to the 5 to 1 shift because of her sex, DDOC violated her rights under Title VII.

## COUNT III
## TITLE VII – RETALIATION – CONSTRUCTIVE DISCHARGE (BATES)

49. Plaintiffs incorporate and reallege paragraphs 1 through 48 as if fully restated herein.

50. In 2003, Bates voiced concerns about discrimination at CVOP and filed a charge of discrimination with the EEOC.

51. In response, a campaign of retaliation was initiated against Bates that was designed to force Bates from her employment with DDOC.

52. The unlawful actions of DDOC and CVOP directly and proximately caused Bates to be constructively discharged.

## COUNT IV
## TITLE VII--RETALIATION (ALL PLAINTIFFS)

53. Plaintiffs incorporate and reallege paragraphs 1 through 52 as if fully restated herein.

54. The above-described acts of retaliation constitute violations of plaintiffs' right to be free from retaliation for having complained about discriminatory conduct in the workplace in violation of Title VII.

55. As a direct and proximate result of the defendant's unlawful acts, the plaintiffs have been injured and have suffered, and will continue to suffer, pain, fear, humiliation, mental and emotional distress, as well as lost wages.

## COUNT V
## TITLE VI –DISPARATE TREATMENT (KAREN HAWKINS)

56. Plaintiffs incorporate and reallege paragraphs 1 through 55 as if fully restated herein.

57. Karen Hawkins has been subject to the discriminatory enforcement of workplace policies and procedures that have routinely been applied in favor of white employees and/or male employees at CVOP.

58. By selectively enforcing policy and procedures in favor of white and male employees, defendant has violated Karen Hawkins' rights under Title VII.

## COUNT VI
## TITLE VII–DISPARATE TREATMENT
## (DION HAWKINS, DONELL WINDER)

59. Plaintiffs incorporate and reallege paragraphs 1 through 58 as if fully restated herein.

60. Dion Hawkins and Donell Winder have been subject to the discriminatory enforcement of workplace policies and procedures that have routinely been applied in favor of white employees at CVOP.

61. By selectively enforcing policy and procedures in favor of white employees, defendant has violated Dion Hawkins' and Donell Winder's rights under Title VII.

WHEREFORE, plaintiffs respectfully requests that the Court enter judgment in their favor as follows:

    a.    Damages for lost wages in an amount to be proven at trial;

    b.    Compensatory damages for pain and suffering and mental anguish

    c.    Equitable relief including, but not limited to, front pay;

    d.    Payment of attorneys' fees and costs;

e. Punitive damages; and

f. Such other and further legal and equitable relief as the Court deems just and necessary, including, but not limited to, pre-judgment and post-judgment interest and costs.

SMITH, KATZENSTEIN & FURLOW LLP

_____
Roger D. Anderson (ID No. 3480)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Telecopy: 302-652-8405
Email: RDA@skfdelaware.com
Attorneys for Plaintiffs

Date: July 25, 2005