IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN HAWKINS,<br>DION HAWKINS,<br>DONELL WINDER,<br>CHRISTA BATES,<br><br>       Plaintiff,<br><br>v.<br><br>STATE OF DELAWARE DEPARTMENT<br>OF CORRECTION,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 05-530-SLR<br>)<br>)<br>)    JURY TRIAL DEMANDED<br>)<br>) |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO SEVER**

SMITH, KATZENSTEIN & FURLOW LLP
Roger D. Anderson (ID No. 3480)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-8400
Telecopy: 302-652-8405
Email: RDA@skfdelaware.com
Attorneys for Plaintiffs

Date:   February 23, 2006

10011544.WPD

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ............................. 1

SUMMARY OF THE ARGUMENT ........................................ 2

STATEMENT OF FACTS ................................................. 3

ARGUMENT ............................................................ 6

    I.    These Plaintiffs are Properly Joined under FED. R. CIV. P. 20(a). ...... 6

        A.    The Plaintiffs' Claims are Logically Related ................ 6

        B.    Plaintiffs Share Common Questions of Law and Fact. ......... 9

    II.    Severance is Inappropriate. .................................... 11

CONCLUSION ......................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Alexander v. Fulton County*,
    207 F.3d 1303 (11th Cir. 2000) .................................................. 9

*Anderson v. Consolidated Rail Corp.*,
    No. CIV.A. 98-6043, 2000 WL 1201456 (E.D. Pa. Aug. 10, 2000) ....... 14, 15

*Bailey v. Northern Trust Co.*,
    196 F.R.D. 513 (N.D. Ill. 2000) ............................................. 8, 10, 11

*Bancmortgage Fin. Corp. v. The Guarantee Title & Trust Co.*,
    No. Civ.A. 99-CV-2932,
    2000 WL 1521600 (E.D. Pa. Oct. 6, 2000) ........................... 11, 12

*Barnes v. American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ................................................. 9

*Fong v. Rego Park Nursing Home*,
    No. 95 Civ. 4445, 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996) ........... 13

*Geir v. Educ. Serv. Unit No. 16*,
    144 F.R.D. 680 (D. Neb. 1992) ............................................ 6, 7

*Grayson v. K-Mart Corp.*,
    849 F. Supp. 785 (N.D. Ga. 1994) ..................................... 10, 11, 14

*Henderson v. AT&T*,
    918 F. Supp. 1059 (S.D. Tex. 1996) ....................................... 14

*Hussain v. TCF Bank*,
    No. 03-C-9404, 2004 WL 1470282 (N.D. Ill. June 30, 2004) ............ 8, 9

*King v. Pepsi Cola Metropolitan Bottling Co.*,
    86 F.R.D. 4 (E.D. Pa. 1979) ................................................ 13, 14

*Klimaski v. Parexel Int'l*,
    No. Civ.A. 05-298,
    2005 WL 857350 (E.D. Pa. Apr. 4, 2005) ................................... 7

*Madison v. Hennepin County*,
   No. Civ. 02-4756, 2003 WL 21639176 (D. Minn. July 1, 2003) . . . . . . . . 8-10, 15

*Miller v. Hygrade Food Prods. Corp.*,
   202 F.R.D. 142 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 12, 15

*Moorehouse v. Boeing Co.*,
   501 F. Supp. 390 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mosley v. General Motors Corp.*,
   497 F2d 1330 (8th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

*Smith v. Northeastern Ill. Univ.*,
   No. 98-C-3555, 2002 WL 377725 (N.D. Ill. Feb. 28, 2002) . . . . . . . . . . . . . . . 8

*The Norwood Co. v. RLI Insurance Co.*,
   No. Civ.A. 01-6153, 2002 WL 523946 (E.D. Pa. Apr. 4, 2002) . . . . . . . . . . . . . 9

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Xerox Corp. V. SCM Corp.*,
   576 F.2d 1057 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes & Other Authorities**                                                          **Page(s)**

42 U.S.C. § 2000e, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FED. R. CIV. P. 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8, 9, 11

FED. R. CIV. P. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

FED. R. CIV. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

FED. R. CIV. P. 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   *Federal Practice and Procedure* § 1652 (3d ed. 2001) . . . . . . . . . . . . . . . . . . . . . . 6

## NATURE AND STAGE OF THE PROCEEDINGS

On July 25, 2005, Karen Hawkins, Dion Hawkins, Donell Winder and Christa Bates (collectively, the "Plaintiffs") filed their civil action against the State of Delaware Department of Correction ("Defendant") seeking damages on the basis of sex and race discrimination and retaliation under provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). (Complaint (D.I. 1) ("Compl.")). On August 25, 2005, the Defendant answered the Complaint. (Answer (D.I. 4)). On September 30, 2005, the Court held a scheduling conference (the "Scheduling Conference") and on September 30, 2005, the Court entered a scheduling order ("Scheduling Order" (D.I. 7)). Pursuant to the terms of the Scheduling Order, on April 14, 2006, discovery will close. The parties have each filed initial disclosures and exchanged discovery requests. No depositions have been taken by either party and follow-up discovery will need to be completed prior to the close of discovery. On February 8, 2006, Defendant filed its Motion to Sever (D.I. 26) and its Opening Brief in support thereof (D.I. 27) (collectively, the "Motion to Sever"). This is Plaintiffs' Answering Brief in Opposition Defendant's Motion to Sever.

## SUMMARY OF THE ARGUMENT

1.  The Defendant's Motion to Sever focuses solely on the separate causes of actions and ignores the facts alleged in the Complaint that establish the basis for joinder. A review of the Complaint in its entirety reveals that the Plaintiffs' claims are logically related and share common questions of law and fact that make joinder appropriate under FEDERAL RULE OF CIVIL PROCEDURE 20(a). Severance is not warranted where, as here, Plaintiffs are located in one small facility and allege a common pattern and practice of discriminatory conduct.

2.  Defendant fails to allege sufficient grounds for severance or for separate trials on logically related claims arising out of common issues of law and fact. Severance and/or separate trials would waste the Court's and the parties' resources and time and result in needless delay. Defendant's allegations of prejudice against Defendant are speculative and insufficient to support a motion to sever or for separate trials. Finally, given the procedural posture of this case, Defendant's Motion to Sever is premature.

## STATEMENT OF FACTS

Defendant's statement of facts exclusively cite to the separate claims for relief and ignore the majority of allegations in the Complaint that establish the basis for joinder in this case. During the events relevant to the claims set forth in the Complaint, Plaintiffs were employees of the Delaware Department of Corrections (the "DDOC") assigned to the Central Violation of Probation faciltiy ("CVOP"). (Compl. ¶ 8). CVOP was under the management of Warden Vincent Bianco ("Bianco") and Deputy Warden James Hutchins ("Hutchins") during all events relevant to this litigation. (Compl. ¶ 9). Bianco and Hutchins are integral participants in Plaintiffs' allegations.

The Plaintiffs' claims arise out of the same transaction and occurrence or series of transactions or occurrences and are otherwise logically related and involve common questions of fact or law. In response to grievance proceedings and the filing of a charge of discrimination with the Delaware Department of Labor ("DDOL"), Karen Hawkins was subject to less favorable treatment and to a series of discriminatory and retaliatory actions by her direct supervisors, Bianco and Hutchins. (Compl. ¶ 17). Defendant also took retaliatory and discriminatory actions against her husband, Dion Hawkins, by forcing his involuntary transfer to Delaware Correctional Center ("DCC"), a larger "Level 5" facility with a more violent inmate population.[1] (Compl. ¶¶ 22, 23). At that time, the Hawkins were the only African-American couple at CVOP. (Compl. ¶ 22). Testimony by Bianco at Dion

---

[1] We understand that a "Level 5" facility, such as DCC, is a maximum security prison within the Delaware Department of Correction. A "Level 4" facility, such as CVOP, has a smaller, less violent inmate population.

10011544.WPD                                        3

Hawkins' grievance proceeding also shows that a racial motive was used to justify the transfer. (Compl. ¶ 23).

Following Dion Hawkin's involuntary transfer, Dion Hawkins filed a grievance through his union and a charge of discrimination with the Delaware Department of Labor ("DDOL"). (Compl. ¶ 24). Plaintiffs Donell Winder and Christa Bates informed Defendant of their intent to be character witnesses in favor of Dion Hawkins and complained of discrimination at CVOP. (Compl. ¶¶ 27, 34). Subsequently, Donell Winder and Christa Bates were subject to discriminatory and retaliatory conduct at CVOP by his or her direct supervisors and co-workers. (Compl. ¶ 25, 28 and 35).[2]

Plaintiffs' claims share numerous common elements of fact or law that make joinder appropriate in this case. In addition to working at the same facility under the same command structure, Plaintiffs have alleged that they were also subject to a series of similar discriminatory and retaliatory actions, including but not limited to the following:

- commencement of internal investigations and/or disciplinary proceedings for conduct that was not materially different from that of other employees who were neither investigated nor subject to discipline (Compl. ¶¶ 17(g), 25(a), 28(a), 35(a));
- denial of time off from work, allegedly because of minimum staffing issues while permitting other officers to take time off at times when

---

[2] Although not pled in the Complaint, facts will be developed through discovery to establish that Dion Hawkins, Christa Bates and Donell Winder worked the same shift and were subject to the same or similar retaliatory conduct.

10011544.WPD                         4

  the officer's absence caused the facility to fall below minimum staffing requirements (Compl. ¶¶ 25(b), 28(b), 35(b));

- alteration of job duties in a manner that either undercut Plaintiffs' authority or raised significant safety concerns with respect to interaction with offenders at CVOP (Compl. ¶¶ 17(f), 25(c), 28(c), 35(c) and (d));

- refusal to complete or update employee performance appraisals (Compl. ¶¶ 17(I), 25(d), 28(d), 35(e)); and

- denial of promotional and transfer opportunities (Compl. ¶¶ 18, 35(d)).

  Plaintiffs further allege that during all times relevant to this action, Defendant (i) did not have an adequate policy or complaint procedure for employees subjected to discriminatory and retaliatory conduct; (ii) had a practice of failing to prevent retaliation against its employees who have complained of discrimination and other forms of misconduct by fellow employees; and (iii) had a practice of commencing internal investigations and imposing discipline against employees who make internal complaints as a means of discouraging them and other employees from filing or continuing to pursue their complaints. (Compl. ¶¶ 37 - 39).

## ARGUMENT

I.  **These Plaintiffs are Properly Joined under FED. R. CIV. P. 20(a).**

"All persons may join in one action as plaintiffs if they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these person will arise in the action." FED. R. CIV. P. 20(a). The purpose of the rule is to promote convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. *Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D. Pa. 2001) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1652 at 395 (3d ed. 2001); *Geir v. Educ. Serv. Unit No. 16*, 144 F.R.D. 680, 688 (D. Neb. 1992) (citing *Mosley v. General Motors Corp.*, 497 F2d 1330, 1332 (8th Cir. 1974)). Single trials tend to lessen the delay, expense and inconvenience to all concerned. *Geir*, 144 F.R.D. at 688; *Mosley*, 497 F.2d at 1332. "Permissive joinder falls within the Court's sound discretion and is to be liberally granted; 'under the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Miller*, 202 F.R.D. at 144 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

A.  **The Plaintiffs' Claims are Logically Related.**

"Courts generally apply a case-by-case approach in determining whether a particular factual situation meets the same transaction or occurrence test." *Miller*, 202 F.R.D. at 144. "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as

upon their *logical relationship*." *Id.* (citations omitted). Absolute identity of all events is unnecessary. *Geir,* 144 F.R.D. at 688; *Mosley,* 497 F2d at 1332. "A logical relationship between claims exist where the claims involve the same factual and legal issues, where they are offshoots of the same basic controversy between the parties, or where separate trials of each claim would involve a substantial duplication of effort and time by the parties and the court." *Klimaski v. Parexel Int'l,* No. Civ.A. 05-298, 2005 WL 857350, at *3 (E.D. Pa. April 4, 2005); *Xerox Corp. V. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir. 1978).

    Here, Plaintiffs' claims satisfy the logical relationship test. Plaintiffs have alleged the Defendant has a common pattern and practice of failing to prevent retaliation against employees who complain of discrimination or other misconduct and of instituting internal investigations or disciplinary proceedings against such employees as a means of discouraging them and others from filing and pursing complaints of discrimination. (Compl. ¶¶ 37-39). Moreover Plaintiffs' claims here are interrelated and stem from the same practice and policy. Karen Hawkins' grievance, filed in April 2003, with respect to discriminatory practices regarding the assignment of overtime, precipitated a series of discriminatory and retaliatory actions against both Karen and Dion Hawkins. (Compl. ¶¶ 17, 23). Subsequently, Dion Hawkins filed a grievance through his union and a charge of discrimination with the DDOL. (Compl. ¶ 24). Plaintiffs Donnell Winder and Christa Bates each filed letters in support of Dion's grievance and complained of discriminatory practices at CVOP. (Compl. ¶¶ 27, 34). Thereafter, Bates and Winder also became subject to a series of retaliatory actions similar to those experienced by the Hawkins. (Compl. ¶¶ 25, 28, 35). Each of the Plaintiffs experienced a series of similar retaliatory and discriminatory actions including, but

not limited to, the initiation of pre-textual investigatory and disciplinary actions, the alteration of job duties in a manner that undercut Plaintiffs' authority or raised significant safety concerns, denial of time off, and refusal to complete Plaintiffs' employee performance appraisals. (Compl. ¶¶ 17, 25, 28, 35).

Defendant's rely on *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000) and *Hussain v. TCF Bank*, No. 03-C-9404, 2004 WL 1470282 (N.D. Ill. June 30, 2004) to suggest that the first prong of Rule 20(a) is not satisfied. Both cases are distinguishable from the case at bar. In *Bailey*, there was no allegation that the defendant had a common discriminatory practice or policy. *Bailey*, 196 F.R.D. at 514. Here, Plaintiffs allege a common discriminatory and retaliatory policy designed to intimidate Plaintiffs and others from pursuing their complaints. (Compl. ¶¶ 38 and 39). *See Madison v. Hennepin County*, No. Civ. 02-4756, 2003 WL 21639176, at *1 (D. Minn. July 1, 2003) (finding that a policy or pattern and practice of discrimination can satisfy the same transaction or occurrence requirement); *see also, Smith v. Northeastern Ill. Univ*, No. 98-C-3555, 2002 WL 377725 (N.D. Ill. Feb. 28, 2002) (approving joinder of plaintiffs' hostile work environment claims and factually distinct retaliation claims). Moreover, each of Plaintiffs' claims are inextricably intertwined and have all arisen at the same facility under the management and control of Warden Bianco and Deputy Warden Hutchins, both of whose actions are integral to each of Plaintiffs' claims. (Compl. ¶ 9).

Although in *Hussain* the Court found that joinder was inappropriate, that case appears to involve individuals who work in separate facilities and have substantially different job duties. *Hussain*, 2004 WL 1470282, at *2. As set forth above, the connections between

these Plaintiffs run far deeper than the conduct alleged in *Hussain*. Each of these Plaintiffs worked in the same facility and were injured by the same policy and practice designed to inhibit the filing of complaints. *See Madison*, 2003 WL 21639176, at *1; *see also Mosley*, 497 F.2d at 1334 (finding a company-wide policy designed to discriminate met the first requisite for joinder under FED. R. CIV. P. 20(a)). Accordingly, these Plaintiffs' claims are logically related satisfying the first prong of the FED. R. CIV. P. 20(a) analysis.

### B.   Plaintiffs Share Common Questions of Law and Fact.

In determining whether a common question of law or fact will arise, courts have turned to the commonality requirement under FED. R. CIV. P. 23(a). *Miller*, 202 F.R.D. at 145; *Mosley*, 497 F.2d at 1334. That prerequisite necessitates a 'very low threshold.'" *Miller*, 202 F.R.D. at 145 (citing *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 n.15 (3d Cir. 1998)). "[T]he law in this Circuit demonstrates that the same series of transactions or occurrences prerequisite under rule 20 essentially consume the second requirement that there arise a question of law or fact common to all joined parties." *The Norwood Co. v. RLI Insurance Co.*, No. Civ.A. 01-6153, 2002 WL 523946, at * 3 (E.D. Pa. Apr. 4, 2002). The rule does not require that all questions of law or fact be common. *Mosley*, 497 F.2d at 1334. Plaintiffs need only share one common question of law or fact. *Miller*, 202 F.R.D. at 145; *Barnes*, 161 F.3d at 140. "The fact that the plaintiffs suffered different effects - - in this case, discrimination in promotions, transfers, assignments, or discipline - - from the alleged policy of discrimination did not preclude the trial court from finding a common question of law and fact." *Alexander v. Fulton County*, 207 F.3d 1303, 1324 (11th Cir. 2000).

In *Madison*, plaintiffs alleged a pattern and practice of discrimination based on race. As a result of this pattern and practice of discrimination, individual supervisors and employees discriminated against the plaintiffs in a variety of situations. *Madison*, 2003 WL 21639176, at *1. For example, nine plaintiffs made allegations of hostile work environment, six plaintiffs claimed to have been subjected to harsher discipline or unfair performance reviews, and several plaintiffs made allegations of retaliation and discrimination in pay or discriminatory promotion or demotion policies. *Id*. The Court in *Madison* denied the defendant's motion to sever finding that the allegations presented many different effects of the alleged discriminatory policy, but the allegations stemmed from the same policy. *Id*. at *4.

Here, Plaintiffs share numerous common elements of fact and law. Plaintiffs' claims are each tied to the other by acts of support for the other Plaintiffs or acts in opposition to discrimination and retaliation by Defendant against the Plaintiffs. As a result thereof, each Plaintiff was subjected to a series of discriminatory and retaliatory actions. (Compl. ¶¶ 17, 23, 24, 25, 28, 35 and 36). Common to all Plaintiffs are the allegations that Defendant commenced pre-textual internal investigations disciplinary proceedings against Plaintiffs, took actions to alter job duties to undermine authority of the Plaintiffs, denied leave and refused to complete employee performance appraisals. (*Id*.).

Defendant reliance on *Grayson v. K-Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994) and *Bailey v. Northern Trust*, 196 F.R.D. 513, for the proposition that Plaintiffs have failed to assert common question of law or fact is misplaced. In *Grayson*, the plaintiffs were eleven store managers from four different states who each worked in a different store,

geographically remote from each other. *Grayson*, 849 F. Supp. at 786, 788. The decision to demote plaintiffs originated with an individual district manager whose decision was influenced by three different regional managers. *Id.* at 789. There was nothing to unify those very distinct plaintiffs. In *Bailey*, the plaintiffs failed to even allege that the defendant had a common discriminatory practice or policy, and there was no evidence that the claims were related. *Bailey*, 196 F.R.D. at 514, 517. Here, Plaintiffs were centrally located at CVOP which is under the command of Warden Bianco and Deputy Warden Hutchins. Moreover, Plaintiffs allege that the Defendant has a common policy and practice of discriminatory and retaliatory conduct and that each of the Plaintiffs experienced discriminatory and retaliatory conduct as a result of such policy. (Compl. ¶ 39). Thus, these Plaintiffs also satisfy the second prong of the FED. R. CIV. P. 20(a) test.

**II.    Severance is Inappropriate.**

Part II and III of Defendant's opening brief in support of the Motion to Sever appear to argue alternatively, that (1) Plaintiffs' claims are mis-joined, and, therefore, are subject to severance under FED. R. CIV. P. 21, or (2) even if Plaintiffs' claims are properly joined, the Plaintiffs' claims should be severed for purposes of trial and heard by separate juries. Such argument at this point in the proceedings is speculative and premature and fails to allege any facts that support a determination of prejudice.

Determination of severance under FED. R. CIV. P. 21 or for separate trials under FED. R. CIV. P. 42(b) appears to turn on the application of factors arising under FED. R. CIV. P. 42. *See Bancmortgage Fin. Corp. v. The Guarantee Title & Trust Co.*, No. Civ.A.

99-CV-2932, 2000 WL 1521600, at *2 (E.D. Pa. Oct. 6, 2000) (applying Rule 42(b) factors to Rule 21 severance determination).

> Fed. R. Civ. P. 42(b) provides as follows:
>
> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trail of any claim, crossclaim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues . . . .

This Court is afforded broad discretion to decide whether or not Plaintiffs' cases should be tried separately. *Miller*, 202 F.R.D. at 145. In making its decision under either Rule 21 or 42, the Court must consider:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Bancmortgage*, 2000 WL 1521600, at *2.

Here, there exists substantial similarity with respect to the nature of discriminatory and retaliatory conduct experienced by Plaintiffs. The conduct complained of by Plaintiffs occurred at Defendants CVOP facility under the management of Warden Vincent Bianco and Deputy Warden Hutchins. (Compl. ¶¶ 8, 9). Each Plaintiff has alleged substantially similar discriminatory and retaliatory conduct stemming from Defendants's discriminatory policies. (Compl. ¶¶ 17, 25, 28, 35). Thus, common issues arise with

respect to each Plaintiff. Moreover, Plaintiffs anticipate that there will be substantial overlap with respect to the witnesses between the Plaintiffs.

The fact that this case may require proof of discrimination of four separate individuals does not require the Court to enter an order for severance or separate trials. In *King v. Pepsi Cola Metropolitan Bottling Co.*, 86 F.R.D. 4 (E.D. Pa. 1979), the court denied a motion to sever or for separate trials of six separate plaintiffs employment discrimination claims. "Even though proof of the discrimination will involve the various work records of each [of the six plaintiffs], there will also be a substantial overlap in the evidence presented." *King*, 86 F.R.D. at 6.

Plaintiffs and the Court would also be substantially inconvenienced and prejudiced if the Motion to Sever or for separate trials is granted in this case. *See Fong v. Rego Park Nursing Home*, No. 95 Civ. 4445, 1996 WL 468660, at * 3 (E.D.N.Y. Aug. 7, 1996) (finding benefits to all the parties and the interests of judicial economy better served by one trial where testimony in each of the separate trials would be duplicated). Here, Defendant has been aware of the nature of this lawsuit for over seven months and of the Court's Scheduling Order for a single trial since September 2005. However, Defendant did not raise the issue of severance until now - two months before the close of discovery and prior to the noticing of any deposition by Plaintiffs or Defendant. Defendant's motion, if granted at this stage, has the potential to quadruple the parties discovery obligations and would significantly delay getting this matter to trial. Plaintiffs would also be burdened with the obligation to present many of the same witnesses at multiple trials. Such duplication

would be a waste of the Plaintiffs' and the Court's resources and would substantially push back the timetable for trial.

Defendant overstates the potential prejudice to it if the Motion to Sever is denied. *See King*, 86 F.R.D. at 6. (finding dangers of jury confusion in case involving six plaintiffs asserting employment discrimination claims no greater than in any other case). Moreover, the case law cited by the Defendant for the proposition that it will be prejudiced are readily distinguishable from the case at bar. Several of those cases involve multiple plaintiffs in multiple states working at different locations under different management personnel and decision makers. *See Grayson v. K-Mart Corp.* 849 F. Supp. 785 (11th Cir. 1994) (eleven plaintiffs situated in four separate states involving federal and state law claims); *see also Anderson v. Consolidated Rail Corp.*, No. CIV.A. 98-6043, 2000 WL 1201456 (E.D. Pa. Aug. 10, 2000) (granting motion to sever for fourteen plaintiffs working in different jobs in different work areas under different decision-makers); *Henderson v. AT&T*, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996) (five plaintiffs working in separate offices on separate teams calling on separate customers asserted state and federal law claims) (abrogated on other grounds by subsequent Fifth Circuit law). It should also be noted that the Court in *Henderson* denied the motion for separate trials for two of the plaintiffs who worked in the same office even though they asserted different claims. *Id.* at 1064.[3]

---

[3]The Court should also note that the Court in *Moorehouse v. Boeing Co.*, 501 F. Supp. 390 (E.D. Pa. 1980), did not rule on the issue of joinder, but rather on an evidentiary issue regarding admission of testimony from plaintiffs in other cases involving numerous other defendants, some of whom were not a party to the litigation at issue in the case. Thus, *Moorehouse* is distinguishable from this case.

Finally, the Defendant's request is premature. The court in *Miller* found that it could not make such a determination until it was clear exactly what issues would go to trial. *Miller,* 202 F.R.D. at 145. See also *Madison*, 2003 WL 21639176, at *4 (the court may revisit the issue of severance after discovery was complete and perhaps after dispositive motions had been decided); *Anderson*, 2000 WL 1201456, at * 1 (court denied defendant's original motion to sever prior to completion of discovery). Here, as in *Miller, Madison* and *Anderson,* discovery has not yet closed and dispositive motions have not been filed. The Defendant merely speculates about the tremendous danger of jury bias and confusion of the issues. However, at this stage of this case, such statements are just that - speculation. It is simply too soon to determine which of Plaintiffs' claims will survive or what should or should not be severed.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Sever should be denied.

        SMITH, KATZENSTEIN & FURLOW LLP

        */s/ Roger D. Anderson*
        Roger D. Anderson (ID No. 3480)
        800 Delaware Avenue, 7th Floor
        P.O. Box 410
        Wilmington, DE 19899 (Courier 19801)
        Telephone: 302-652-8400
        Telecopy: 302-652-8405
        Email: RDA@skfdelaware.com
        Attorneys for Plaintiffs

Date:   February 23, 2006