IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAREN HAWKINS, | : |
| DION HAWKINS, | : |
| DONELL WINDER, | : |
| CHRISTA BATES, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :     C.A.No. 05-530-SLR |
| | : |
| STATE OF DELAWARE | : |
| DEPARTMENT OF CORRECTION, | : |
| | : |
| Defendant, | : |

**DEFENDANT'S REPLY IN SUPPORT OF**
**ITS MOTION FOR PROTECTIVE ORDER**

On May 5, 2006, State of Delaware, Department of Correction ("Defendant") filed a Motion for Protective Order ("Motion") pursuant to Rule 26(c) and Local Rule 30.2 seeking an order from the Court staying the deposition of Monica Washington. Plaintiffs filed their response ("Pltfs' Response") on May 18, 2006[1], that which follows in Defendant's Reply in Support of its Motion for Protective Order:

**BACKGROUND**

1.   On April 18, 2006, Plaintiffs' noticed the deposition of Monica Washington, a hearing officer, formally employed by the State of Delaware. At all time relevant to the testimony that the Plaintiffs are seeking, Ms. Washington was an employee of the State of Delaware, State Personnel Office ("SPO"), as a hearing officer.

---

[1] Plaintiffs issued a subpoena *duces tecum* ("Subpoena") on March 30, 2006, directed to the SPO. While the Department of Justice represents both the SPO and the Department of Corrections, counsel assigned to represent these departments differs. As such, Defendant contends that this motion is not the proper pleading in which to reply to the Plaintiffs' prospective Motion to Compel (Pltf. Resp. at fn 2).

2.     Defendant, on April 20, 2006, corresponded to Plaintiffs' counsel its position that "[p]ersons performing adjudicating functions are not subject to examination in furtherance of the litigation objective of the parties." *Evans v. Justice of the Peace Court No. 19*, 652 A.2d 574 (Del. Supr. 1995), and requested that the Plaintiffs withdraw their notice of deposition by April 26, 2006.

3.     In response to Defendant's April 20, 2006 correspondence, Plaintiff replied, with a copy to counsel representing the SPO that the Plaintiffs were in the process of reviewing Defendant's position and would respond by April 26, 2006. On the given date, the Plaintiffs' responded that it was their position that the deliberative process privilege does not bar the deposition of Ms. Washington in that their "inquiry focuses on (i) the documents and testimonial evidence (or records thereof) provided by the Department of Correction and the Hawkins and (ii) whether testimony and evidence provided by the Hawkins through the grievance process was the predicate for additional retaliatory acts against the Hawkins and other plaintiffs in this case."

4.     On May 1, 2006, the SPO's counsel wrote to Plaintiffs' counsel advising them that they would turn over the entire contents of its file except for Ms. Washington's hand written notes taken during the grievance hearing ("Grievance Hearing"). This document production was hand delivered to Plaintiffs' counsel on May 3, 2006.

5.     The next day, May 4, 2006, Defendant's counsel wrote to Plaintiffs' counsel again requesting that the notice of deposition of Ms. Washington be withdrawn as the entire fact file had been produced with the exception of Ms. Washington's handwritten notes withheld based on the deliberative process privilege. Further, since all factual documents in existence had been produced, any questioning of Ms. Washington

could only seek her mental impressions and therefore invade the deliberative process privilege.

6. In the early evening of May 4, 2006, Plaintiffs' counsel responded denying Defendant's request for a withdrawal of the deposition notice stating that since the documents produced did not contain a transcript or tape of the proceedings[2], that Ms. Washington's notes are the only "transcript" of the proceeding. Further, that the deposition of Ms. Washington may provide evidence as to statements made by the parties at the hearing. Given the Plaintiffs' position, Defendant filed its Motion for Protective Order (D.I. No. 100).

7. Defendant could not have filed its Motion for Protective Order earlier and been in complete compliance with Local Rule 7.1.1. which requires "that the attorney making the motion has made a reasonable effort to reach agreement with the opposing attorney on the matters set forth in the motion."

**THE DEPOSITION SHOULD NOT PROCEED**

8. Plaintiffs acknowledge in their response that it is well-settled that "it is most irregular to subject adjudicatory officials to pre-trial and trial interrogation regarding their mental or decisional processes in the proper performance of their official duties." *Brooks v. Johnson*, 560 A.2d 1001, 1004 (Del. 1989). In *Brooks*, the Court was faced with a plaintiff seeking to examine members of a medical peer review panel ("panel") which had rendered a decision adverse to her. The *Brooks* Court found that the "panel members [were] serving as adjudicatory officials. While not judges, they are nonetheless required to hear and weigh evidence, make findings and decide all matters

---

[2] Step Three Grievance Hearing, the type of hearing over which Ms. Washington presided, are not recorded or transcribed.

before [them] in connection with a judicial proceeding." *Id.* at 1004. Therefore, the *Brooks* Court concluded that "denying a party's right to subpoena or examine a panel member raises [no] constitutional issues." *Id.* As additional support of its decision, the *Brooks* Court cited to the analysis in *DiFilippo v. Beck*, 520 F.Supp. 1009 (D.Del. 1981) that the "introduction of the panel's opinion into evidence did not violate due process because the parties were given ample opportunity before and during trial to refute the evidence, and to cross-examine witnesses relied upon by the panel." *Id.* Ms. Washington's role in the instant action is similar to the panel's role in *Brooks*. As the hearing officer, Ms. Washington was to hear and weigh evidence and decide the matter. The Plaintiffs have ample opportunity to review the documents presented to Ms. Washington and to depose all the witnesses as to their testimony before Ms. Washington. Eight individuals appeared at the Grievance Hearing. Of these eight individuals, Plaintiffs have already taken the deposition of three witnesses. Plaintiffs have requested to take the deposition of only two others. One witnesses was not originally on the list of witnesses to be deposed, but subsequent to the filing of the Motion has been added to the deposition list. In fact, the Plaintiffs have already taken nine (9) depositions so far in this case and are planning on taking another seven (7) depositions. Of the nine depositions taken, three are of witnesses who appeared at the Grievance Hearing before Ms. Washington.

      9.     Plaintiffs claim that they "are seeking an impartial witness as to what was said in the grievance proceeding." Pltf. Response at ¶ 4. It is undisputed that Ms. Washington was the hearing officer for the grievance proceeding in question <u>not</u> an impartial witness. Thus, Ms. Washington was the trier of fact, whose role was to hear

4

and weigh the evidence, make findings and ultimately render a decision. Ms. Washington did just that. In her decision[3], she details the testimony that was presented, the weight she gave the testimony and she rendered a decision in favor of Plaintiff Dion Hawkins. Ms. Washington's role was not as a fact witness but as the **trier of fact**. Any questions directed to Ms. Washington would therefore ultimately seek her mental impressions of the testimony presented to her.

10. Additionally, Plaintiffs seek to have Ms. Washington's testimony used to "expose inconsistencies with other statements made by the Defendant or its witness in this case." Pltfs' Response at ¶ 6. In fact, Plaintiffs state that they may use "Ms. Washington's testimony to impeach other statements and testimony offered by the Defendant." *Id.* This statement, clearly demonstrates Plaintiffs' intent to call Ms. Washington at trial to testify against a party in the grievance proceeding before which she presided. This is exactly the situation which is protected by the deliberative process privilege. *United States v. Morgan*, 313 U.S. 409, 422 (1941).

11. The Third Circuit has set forth a two step inquiry when applying the deliberative process privilege: (1) whether the communications are in fact privileged, and (2) the balance of the parties' interest. *Redland Soccer Club v. Dept. of the Army of the United States*, 55 F.3d 827, 854 (3d Cir. 1995). Both the *Redland* decision and the *Gaskin v. Commonwealth of Pennsylvania.*, No. Civ. A., 94-4048, 1997 WL 734031 at *1 (E.D. Pa. Nov. 1997) decision cited by the Plaintiffs refer to the production of documents as opposed to the testimony of an adjudicatory officer.

12. Assuming *arguendo*, that the same theory would apply to Ms. Washington's deposition as it would to the production of documents, the first step in

---

[3] A copy of the Step Three Grievance Decision is attached hereto as Exhibit A.

determining privilege is that the communication must be both (1) predecisional and (2) deliberative. *Manna v. United States Dept. of Justice*, 815 F.Supp. 798, 7815 (D.N.J. 1993) (*citing Schell v. U.S. Dept. of Health & Human Services*, 843 F.2d 933, 939 (6th Cir. 1988)).  The testimony presented at the Grievance Hearing before Ms. Washington was both predecisional and deliberative.  Privilege has been found to apply to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer . . . ." *Id.* at 815.  This same analysis can be applied to Ms. Washington's testimony as she is more likely to recall the testimony on which she based her decision rather than on testimony she felt was not as relevant or credible.  Once privilege has been established, the party seeking disclosure must show "a sufficient need for the material in the context of the facts or nature of the case . . . ." *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987).  Plaintiffs very simply cannot overcome the privilege as the testimony of the participants in the Grievance Hearing is available through their depositions and all documents produced for review by Ms. Washington has likewise been produced to the Plaintiffs.

       13.   In further support of the position that Ms. Washington should be deposed, Plaintiffs cite to two cases for the proposition that "[i]nformation that is purely factual, even if decision-makers used it in their deliberations is not usually protected."  Pltfs' Response at ¶ 5 (*citing Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 33 (Pa. Commw. Ct. 2001) (*citing Commonwealth ex rel. Unified Judicial System v. Vartan*, 733 A.2d 1258 (Pa. 1999))).  Defendant did not object to the factual portion of Ms. Washington's file being produced and, in fact, Ms. Washington's file (excluding her personal notes) has been produced.  In *Vartan*, the plaintiff issued a subpoena to depose a former Chief

Justice. The *Vartan* Court concluded that it should follow the holding in *United States v. Morgan* that the deliberations of public officials are not subject to discovery. *Id.* at 313 U.S. 409 (1941). Moreover, that "[i]t is not the function of a court to probe the mental processes of administrators." *Coder v. Commonwealth, State Board of Chiropractic Examiners*, 471 A.2d 563, 569 (Pa.Cmwlth 1984). The *Vartan* court also dismissed the plaintiff's theory that like judicial immunity, the deliberative process privilege should not apply to administrative decisions. *Vartan,* 733 A.2d at 1265. Explaining, the *Vartan* court stated that "where a party to an action successfully invokes the deliberative process privilege to protect a witness from being deposed, the effect is notably different. Rather than leaving the plaintiff without a remedy, it simply restricts the discovery the plaintiff is able to seek based on a public policy consideration . . . ." *Id.* at 1265-66. Concluding, the *Vartan* Court held that absent extraordinary circumstances involuntary depositions should not be permitted. *Id.* at 1266.

14. Next, Plaintiffs cite to three cases for the position that "a quasi-judicial officer may be deposed as to relevant matters of fact as long as the factual matters do not probe into mental processes employed in formulating a decision." Pltfs. Response at ¶ 5 (*citing Western Electric Co., Inc. v. Piezo Tech., Inc*., 860 F.2d 428 (Fed. Cir. 1988); *Fisher & Porter Co. v. Corning Glass Works*, 612 F.R.D. 321 (E.D. Pa. 1974); and *Shaffer Tool Works v. Joy Mfg. Co.*, 167 U.S.P.Q. 170, 171 (S.D. Tex 1970)). While these cases appear to support Plaintiffs' proposition, the Plaintiffs have not been completely candid with the Court. The above cited cases are all patent cases in which the plaintiff in each case does not have an adversarial party. The *Western Electric* Court stated that "[i]t is permissible under *Morgan* and its progeny to determine from an

7

examiner whether a party had submitted certain information, or whether specific prior art was before the examiner. In such a case, <u>because there is no adversary</u>, it would be difficult to resolve these facts without testimony of an examiner." 860 F.2d at 433 (emphasis added). Each of the cited cases sought the testimony of a patent examiner. Courts have held that "patent examiners may be deposed if the questions are limited to factual matters and if the questioning does not delve into 'hypothetical or speculative areas' or the examiner's bases, reasons, mental processes, analyses or conclusions.'" *Western Electric*, 802 F.2d at 431 (*citing Shaffer Tool Works*, 167 U.S.P.Q. at 171)). For the most part, the patent examiner's testimony is limited to the prosecution history of the patent application. This is a vastly different factual scenario than in the instant action.

        15.    Here, the Plaintiffs seek to depose the trier of fact – Ms. Washington. What Ms. Washington's later recollection is of the testimony that was given at the time of the Grievance Hearing may be indicative of what she deemed important, while unimportant matters may be forgotten. Ms. Washington's knowledge is intrinsically interwoven with her reasoning and her decision. Disclosure of the details of her memory regarding the testimony of witnesses will inherently provide as least some, and more likely substantial, insight into her mental processes in evaluating the witnesses' credibility and the rationale for the decision she rendered. This is precisely what should be protected, and the deposition of Ms. Washington should not proceed under the Plaintiffs' ruse that the deposition of Ms. Washington is the only way for the Plaintiffs to determine what the witnesses said at the Grievance Hearing. All of these witnesses are available for deposition, or have been deposed and discovery cut-off in this matter has been extended until July 15, 2006.

WHEREFORE, for the reasons set forth in the Motion and above, and in reliance on the authorities cited, Defendant prays that the Notice of Deposition of Ms. Washington be quashed.

                        STATE OF DELAWARE
                        DEPARTMENT OF JUSTICE

                        /s/ Linda M. Carmichael
                        Linda M. Carmichael (ID#3570)
                        Deputy Attorney General
                        820 North French Street
                        6th Floor
                        Wilmington, DE 19801
                        (302) 577-8400

DATED: May 25, 2006

I:\ALABOR\CARMICHAEL\Hawkins et al v. State\Reply in Support of Motion to Quash v2.doc

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KAREN HAWKINS, : | |
| DION HAWKINS, : | |
| DONELL WINDER, : | |
| CHRISTA BATES, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | C.A.No. 05-530-SLR |
| : | |
| STATE OF DELAWARE : | |
| DEPARTMENT OF CORRECTION, : | |
| : | |
| Defendant, : | |

**NOTICE AND CERTIFICATE OF SERVICE**

I, Linda M. Carmichael, Attorney for Defendant State of Delaware Department of Correction, hereby certify that on May 25, 2006, I caused to be served upon the person listed below two true and correct copies of **Defendant's Reply in Support of Its Motion for Protective Order** in the above-captioned matter by U.S. Mail:

Roger D. Anderson, Esquire
Smith, Katzenstein, & Furlow
The Corporate Plaza
800 Delaware Ave.
P.O. Box 410
Wilmington, DE 19899
*Attorney for Plaintiffs*

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

<u>/S/ Linda M. Carmichael</u>
Linda M. Carmichael (I.D. # 3570)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendant

DATE: May 25, 2006

## *CERTIFICATE OF MAILING AND/OR DELIVERY*

I hereby certify that on May 25, 2006, I electronically filed **Defendant's Reply in Support of Its Motion for Protective Order** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Roger D. Anderson, Esquire.

/s/ Linda M. Carmichael
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Linda.Carmichael@state.de.us