# EXHIBIT

# A



RECEIVED SEP 2 2 2003

C.O.A.D. 03-208-1F

## STEP THREE GRIEVANCE DECISION

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### DION HAWKINS
("Grievant")

and

### STATE OF DELAWARE,
### DEPARTMENT OF CORRECTION
("Department")

### 03-00096-DOC-ST4

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Hearing: October 1, 2003
Before: Monica J. Washington, Esq.

Appearances:

For the Grievant:
William Wharton
Jim Hutchins

For the Department:
Alan Machtinger
Vince Bianco
Elizabeth Ford
Dawn Harris
Mike Clendaniel
Thomas Ridgley

P-00479



D. HAWKINS
DEPOSITION
EXHIBIT

DDOL-0479

Hawkins
Page 2

### Nature of Dispute

The Grievant, a Correctional Officer, alleges the Department transferred him from Central Violation of Probation ("CVOP") to Delaware Correctional Center ("DCC") in violation of Merit Rule 19.0100. The relief sought by the Grievant is to be transferred back to CVOP.

### Position of the Parties

The position of the Grievant is as follows:

The Grievant's wife, who also works at CVOP, filed a grievance against the Department. The Grievant wrote an e-mail to Deputy Warden Jim Hutchins on July 14, 2003, indicating that he felt he was being retaliated against because his wife filed a grievance. On July 24, 2003, the Grievant was told he was being transferred from CVOP to DCC due to his relationship with his wife and because his wife supervises him.

The Grievant is assigned to the 12-8 shift, while his wife is assigned to the 7-3/3-11 rotating shift. The Grievant has 5 minutes to interact with his wife during the change of shift. The Grievant's wife only supervises him when he volunteers for overtime. Hutchins approves all overtime and has never told the Grievant that there was a problem when the Grievant worked under his wife's supervision. In fact, this nearly 16 year employee has never been disciplined, receives commendations each year, and was given an exceeds expectation performance rating on his last completed review.

There are at least six married couples that work in the same institution. Some of these employees supervise their spouse on occasion. None of these employees have been transferred in this manner.

CVOP management has a problem with the Grievant's wife. There is no documented evidence of the Grievant causing problems in the workplace and the Grievant has not created any havoc. To transfer the Grievant because of problems management is having with the Grievant's wife is discriminatory.

The position of the Department is as follows:

The Grievant had a recurring problem for the past two years of separating his personal life from his professional one. In late 2001, the Grievant was told by Lieutenant Michael Clendaniel to work in the East Wing instead of the Control Room. The Grievant became angry and stated that if Clendaniel had a problem with his wife do not take it out on him. In 2002, the Grievant called Hutchins and was irate because an inmate threatened his wife and was not immediately disciplined. The Grievant was told that his wife is a "big girl" and he must separate his personal

P-00480

DDOL-0480

Hawkins
Page 3

life from his professional one. In January 2003, the Grievant confronted Lt. David McDonald, who he believed hid his wife's leave slip in a stack of magazines. The Grievant told McDonald that he was tired of him messing with his wife and invited him to step outside in the parking lot to settle the matter. The Grievant was again counseled about separating home from work. The Grievant was not disciplined for his conduct because CVOP management wanted to take care of things internally and resolve the matter at the lowest possible level.

In addition to these three incidents, the Grievant would complain to Hutchins about things that occurred on his wife's shift or about things that was probably repeated information from his wife. To further demonstrate that the Grievant and his wife had a problem separating home from work, the Grievant's wife sent an e-mail to Hutchins asking why the Grievant was not scheduled for an interview for a Sergeant position and why she was not asked to serve on the interview panel for the Sergeant position.

The Grievant's union, COAD, and his wife's union, AFSCME, Local 247, both complained about the disruptive behavior of the Grievant and his wife. The Grievant's behavior has caused a morale problem. In an effort to resolve this problem, it was decided that the Grievant would be transferred because his relationship to his wife was affecting operations.

The collective bargaining agreement that covers the Grievant's position is silent regarding transfers. Thus, CVOP management has the latitude to transfer the Grievant for whatever reason as long as it is not discriminatory. Moreover, the collective bargaining agreement that covers the Grievant's wife's position has constraints regarding transfers and DCC will not accept the Grievant's wife as a transfer. The Department did not discriminate against the Grievant when it transferred him to DCC.

### Discussion and Findings

Merit Rule 19.0100 prohibits discrimination in any aspect of personnel administration because of non-merit factors. The Grievant alleges he was discriminated against when he was involuntarily transferred because of the Department's problem with his wife. The Department contends that the Grievant was transferred for a legitimate non-discriminatory reason; i.e., his relationship to his wife was affecting operations. The Department's reason is pretextual.

The Department presented evidence regarding three incidents where the Grievant could not separate his personal life from his professional one. The latest of these incidents occurred in January 2003. None of these incidents were deemed significant enough to warrant discipline or even a negative performance review. The Department contends that the Grievant's relationship to his wife affected operations, yet the Grievant was allowed to

P-00481

DDOL-0481

Hawkins
Page 4

continue working at CVOP for over six additional months. This fails to support the
Department's contention that the Grievant's behavior was disruptive.

The Department indicated that the Grievant created an "under current" and low morale at
CVOP after the January 2003 incident. Moreover, the Department alleges that COAD and
AFSCME complained about the Grievant's disruptive behavior. The Department provided
no evidence that the Grievant was responsible for the "under current" and low morale at
CVOP. The Department's own witness and Vice President of COAD, Elizabeth Ford,
testified that the Grievant's wife, not the Grievant, was the source of problems at CVOP.
Ford also acknowledged that COAD never complained to the Department about the Grievant.
The Department did present a grievance filed in March 2003 by AFSCME requesting the
Grievant be disciplined for the January 2003 incident. The Second Step grievance hearing
officer denied the grievance and found that the Grievant had apologized for his behavior "and
more importantly, the employee has not engaged in any further unacceptable behavior in the
four months since the incident occurred." This is further evidence that the Grievant's
relationship with his wife was not affecting operations as the Department alleged.

Hutchins testified that the Grievant complained to him about operations based on
information Hutchins surmised came from the Grievant's wife. Nevertheless, Hutchins
testified that he 1) did not know for a fact whether the Grievant's wife provided the Grievant
with the information, 2) could not recall any complaint of significance that the Grievant
made based on information his wife allegedly gave him, and 3) could not verify that the
Grievant repeated his complaints to anyone other than Hutchins. In light of this testimony,
it can not be substantiated that Grievant's wife told the Grievant anything or that any alleged
information was used by the Grievant to negatively affect operations. It is telling that the
Grievant's wife was never disciplined or verbally counseled for inappropriately sharing
information with the Grievant.

The Department pointed to the Grievant's behavior after the meeting in which he was told
he was being transferred to support why he was transferred. Warden Vince Bianco testified
that the Grievant went to the end of the hall after the meeting and "held court with the black
officers that were coming on and getting off shift," indicating that the Grievant's actions may
cause a "racial divide." Bianco admitted that he did not hear what the Grievant said nor was
he told what the Grievant said. To conclude that the Grievant was "holding court" or
contributing to a "racial divide" because he elected to talk with a group of black officers,
with no corroborating evidence, is preposterous and offensive. Moreover, the Grievant's
conduct after he was told about his transfer bears no probative value of why the Grievant was
transferred and whether that reason is discriminatory.

The Department presented an e-mail written by the Grievant's wife to further demonstrate
that the Grievant can not separate his personal life from his professional one. The e-mail was
authored by the Grievant's wife, not the Grievant. The Department presented no testimony
or evidence that the Grievant requested his wife to send the e-mail nor did the e-mail purport
to represent the concerns of the Grievant. Thus, the e-mail does not support the

P-00482

DDOL-0482

Hawkins
Page 5

Department's contention.

The Department did not have a legitimate, non-discriminatory reason for transferring the Grievant. The Grievant did have a problem separating his personal life from his professional one on three separate occasions, but he cleaned up his act for over six months with no additional relapses. It is obvious from the testimony given that the Department has a problem with the Grievant's wife. It is also obvious to this hearing officer that the Department has a problem separating the Grievant from his wife's actions. Hutchins testified that the Grievant and his wife are jointly a problem. Bianco testified that one fuels the other. Nevertheless, neither could provide any compelling evidence of the Grievant's culpability in "fueling" his wife or causing problems. Each example provided pointed to the Grievant's wife as the problem, not the Grievant. It is telling that before the transfer the Grievant asked Hutchins not to involve him or retaliate against him because his wife filed a grievance. Nevertheless, ten days later the Grievant was told he would be transferred.

Merit Rule 15.1 requires that employees be held accountable for their own conduct, not the conduct of others. To punish the Grievant, who has had acceptable conduct, because the Department contractually can not transfer his wife, who the Department really has the problem with, is inappropriate.

The Grievant's relationship with his wife did not affect operations. He should be treated as other similarly situated employees who are allowed to work in the same institution with their spouses. To deny him that and transfer him to another institution is discriminatory.

**Decision**

For the above stated reasons, the grievance is sustained. The Grievant shall be transferred back to CVOP within 7 days of the date of this decision.

Monica J. Washington, Esq.
October 22, 2003

P-00483

DDOL-0483